[No. B069928. Second Dist., Div. Four. Aug. 5, 1993.]

J.W., a Minor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

## COUNSEL

Horvitz & Levy, Lisa R. Jaskol, David S. Ettinger, Betty L. Nordwind and Blanche C. Bersch for Petitioners.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Frederick R. Bennett, Assistant County Counsel, and Sari J. Steel as Amici Curiae.

## OPINION

**EPSTEIN, J.**—We hold that in a paternity action under the Uniform Parentage Act, a nonattorney mother cannot represent her minor son as

guardian ad litem in propria persona, even though she cannot afford counsel and her son is a necessary party to the proceeding. We reach this conclusion because in California, as in other jurisdictions, absent specific statutory authorization, a nonattorney who represents another person in court proceedings violates the prohibition against unauthorized practice of law. The result is that the mother in this case, a party in her own right, may represent herself and may serve as guardian ad litem for her minor child, but she may not function as his attorney. We also consider how legal representation may be afforded to the minor.

Petitioners seek a writ of mandate commanding the respondent superior court to appoint the mother as the minor's guardian ad litem for the purpose of maintaining a propria persona paternity action on behalf of the minor. We shall deny the petition.

### FACTUAL AND PROCEDURAL SUMMARY

Petitioners, a mother and her minor son, wish to initiate an action to establish paternity, as well as for support, custody and visitation arrangements, under the Uniform Parentage Act. (Civ. Code, §§ 7000-7018.)[1] The mother cannot proceed alone in the action because the act requires that a minor, who is 12 years of age or older and who is claimed to be the child of the respondent, be a party to the proceeding. The minor in this case is over 12 years of age. The act also requires that a minor party be represented by a guardian ad litem. (Civ. Code, § 7008.)[2]

On May 27, 1992, pursuant to Civil Code section 7008 and Code of Civil Procedure section 373, subdivision (a),[3] the mother filed an application with the trial court requesting that she be appointed guardian ad litem for the minor for the purpose of initiating the paternity action on his behalf. Concurrently, the mother filed a proposed complaint and an application for a waiver of court fees and costs, based upon her inability to pay. The fee waiver application clearly stated the mother's intent to proceed without

---

[1]This statute, and others discussed in this opinion, have been recodified into the new Family Code, which becomes operative on January 1, 1994. (Stats. 1992, ch. 162, § 10.) The Uniform Parentage Act provisions in that code are sections 7600-7750. We shall refer to the Civil Code sections since they were the operative provisions when the events subject to this petition occurred.

[2]Civil Code section 7008 provides in pertinent part: "The child may, if under the age of 12 years, and shall, if 12 years of age or older, be made a party to the action. If he is a minor and a party to the action he shall be represented by a guardian ad litem appointed by the court." (See Fam. Code, § 7635.)

[3]Code of Civil Procedure section 373, subdivision (a) provides in relevant part: "If the minor is the plaintiff the appointment must be made before the summons is issued, upon the application of the minor, if the minor is of the age of 14 years, . . ."

counsel both as a plaintiff in her own right and as guardian ad litem for her son.

Based upon petitioners' limited income, the trial court approved the waiver of fees and costs. It rejected the application for appointment of the mother as guardian ad litem because of her stated intention to proceed in that capacity in propria persona. The form rejection slip by the court includes the handwritten explanation that "[a] guardian ad litem cannot represent a minor in pro per."

On July 15, 1992, a second application for appointment as guardian ad litem was filed. This time the petitioners supported the application with a memorandum of points and authorities and declarations detailing their financial hardship and the near total lack of contribution from the alleged father. The petitioners described their considerable efforts to obtain legal assistance on a pro bono publico basis. They had sought such assistance and had been turned down (except, on occasion, for help in writing or filling out legal papers) by the Los Angeles County Bar Association Lawyer Referral Service, the Harriett Buhai Center for Family Law, Public Counsel, and Bet Tzedek Legal Services. Petitioners declared that unless the court appointed the mother as guardian ad litem, they would be unable to prosecute their case.

The trial court rejected the second application with essentially the same explanation it had given in its earlier rejection. The court cited *Torres* v. *Friedman* (1985) 169 Cal.App.3d 880 [215 Cal.Rptr. 604], for the proposition that a nonattorney guardian ad litem cannot represent his or her ward in propria persona.

Unable to initiate their paternity suit, petitioners brought this original proceeding seeking a writ of mandate or other appropriate relief. For purposes of the mandate proceeding, petitioners are represented by counsel from the Harriett Buhai Center for Family Law, as well as by other pro bono counsel.[4]

DISCUSSION

I

Our concern is not whether the mother can be appointed as guardian ad litem for her son; such an appointment is clearly within the power of the

[4]The Los Angeles County Council has specially appeared at the invitation of the court, and has addressed questions presented concerning the office of public guardian. No appearance has been made on behalf of respondent court.

court to make. ■■■ The issue is whether, once appointed, the mother may represent her minor son in her capacity as his guardian ad litem for the purpose of maintaining a propria persona proceeding to determine paternity, and for support, custody, and visitation. Having fully briefed the representation issue, petitioners obviously intend that we look beyond the mere propriety of the appointment of a guardian ad litem. Clearly, the appointment and service of the mother as guardian ad litem, by themselves, would not involve unauthorized practice of law. (Bus. & Prof. Code, § 6125 ["No person shall practice law in California unless the person is an active member of the State Bar"].) ■■■ ■■■ Thus, as a technical matter, the mother's stated intent to proceed in propria persona is not a basis to deny her appointment as guardian ad litem.[5] We therefore address the question of whether she may proceed in propria persona in her representative capacity as guardian ad litem.

This issue is framed by the juxtaposition of two legislative schemes, the State Bar Act and the Uniform Parentage Act, which we discuss in turn below. We begin our discussion with a related subject: the representative capacity of a guardian ad litem under California common law and statutes.

## A

■■■ "A guardian *ad litem* is not a party to an action, but merely the representative of record of a party." (*Estate of Cochems* (1952) 110 Cal.App.2d 27, 29 [242 P.2d 56]; *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 13 [118 Cal.Rptr. 21, 529 P.2d 53].) Under California law, a minor may appear by a guardian, by a conservator of the estate, or by a guardian ad litem. (Code Civ. Proc., § 372.) Under the Uniform Parentage Act, however, a minor who is a party "shall be represented by a guardian ad litem appointed by the court." (Civ. Code, § 7008.) Thus, under the act, a minor party must be represented by a guardian ad litem. (*Ibid.*)

■■■ The essential difference between a general guardian and a guardian ad litem is that the former is usually appointed to "take care of the person or property of a minor, not for the purpose of prosecuting a lawsuit" (*D.G. v. Superior Court, supra,* 100 Cal.App.3d at p. 546), while a guardian ad litem is appointed specifically to "prosecute or defend" a suit, and may be appointed even though there is a general guardian. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 65, pp. 102-103; *Berry v. Chaplin* (1946) 74

---

[5] A trial court has discretion to accept or deny an application for appointment of a guardian ad litem (see *D.G. v. Superior Court* (1979) 100 Cal.App.3d 535 [161 Cal.Rptr. 117].) In the absence of a conflict of interest, however, the appointment is usually made on application only and involves little exercise of discretion. (See Code Civ. Proc., §§ 372, 373.)

Cal.App.2d 652, 658 [169 P.2d 442].) Subject to fiduciary duties owed to the ward and the requirement that court approval be obtained for certain acts (see Code Civ. Proc., § 372; *Berry* v. *Chaplin, supra,* 74 Cal.App.2d at p. 657), the guardian ad litem has the power to assent to procedural steps that will facilitate a determination of the minor's case. (*Torres* v. *Friedman, supra,* 169 Cal.App.3d at p. 887.) Thus, a guardian ad litem represents the interests of a person in legal proceedings who lacks capacity to represent himself or herself in those proceedings.

### B

■ Petitioners contend that once a guardian ad litem is appointed there is no need to hire legal counsel even if the guardian ad litem is not an attorney. The authority cited for that proposition (*Carpenter* v. *Superior Court* (1888) 75 Cal. 596, 599 [19 P. 174]; *Fox* v. *Minor* (1867) 32 Cal. 111, 118; *Cole* v. *Superior Court* (1883) 63 Cal. 86, 89) is inapposite since it does not discuss the requirement that persons who represent others in court must be attorneys. (See *California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477, 1482 [264 Cal.Rptr. 83] [decisions not precedent for issues they do not discuss].)

The State Bar Act, originally enacted in 1927, is a comprehensive legislative scheme regulating the practice of law. It prohibits the practice of law by anyone who is not an active member of the State Bar. (Bus. & Prof. Code, §§ 6000-6087.) Since the passage of this act, the general rule has been that "[w]hile any person may represent himself, and his own interests, at law and in legal proceedings: 'No person shall practice law [for another] in this State unless he is an active member of the state bar. (Bus. & Prof. Code, § 6125.)' " (*Abar* v. *Rogers* (1981) 124 Cal.App.3d 862, 865 [177 Cal.Rptr. 655].)

Only one California case has specifically addressed the role of the guardian ad litem in light of the prohibition against unauthorized practice of law. In *Torres* v. *Friedman, supra,* 169 Cal.App.3d 880, a purported substitution of attorney instrument was held to be ineffective because it purported to substitute a nonattorney guardian ad litem as the attorney of record. The court stated that a guardian ad litem could not be substituted in as attorney of record because doing so would leave "the guardian ad litem in the untenable position of perhaps committing a misdemeanor: practicing law without a license. (Bus. & Prof. Code, § 6126.)" (*Torres* v. *Friedman, supra,* 169 Cal.App.3d at p. 888.)

■ Petitioners characterize the *Torres* statement as a dictum to which trial courts are not bound. We do not agree. The *Torres* court was not

required to decide whether the guardian ad litem had the capacity to proceed in propria persona because the substitution of attorney form was not properly signed by the guardian ad litem on behalf of the minor, and the attorney had not received the requisite court approval. Nevertheless, the determination that a "guardian ad litem would be unable to proceed in propria persona" appears not as a dictum, but as the ratio decidendi of an alternate ground supporting the holding. (See 9 Witkin, Cal. Procedure, *supra*, Appeal, § 783, pp. 753-754.)

Whether the statement in *Torres* is dictum or holding, it states a principle that is well supported in other decisions. Thus, in *City of Downey* v. *Johnson* (1968) 263 Cal.App.2d 775 [69 Cal.Rptr. 830], a nonlawyer representing his mother's estate as conservator and as executor after her death was held incapable of appearing in propria persona on behalf of her estate. The court expressly rejected the theory that " 'an administrator, executor or guardian' " could " 'practice law in matters relating to his trusteeship on the theory that he is practicing for himself.' " (*Id.* at p. 779; see also *Abar* v. *Rogers*, *supra*, 124 Cal.App.3d 862 [husband, not licensed to practice law, may not represent his wife as plaintiff in civil action][6] ; *In re Gordon J.* (1980) 108 Cal.App.3d 907, 914 [166 Cal.Rptr. 809, 11 A.L.R.4th 711] [juvenile not entitled to have father assist him in his defense or represent him since father was not member of the bar]; *Campbell* v. *Jewish Com. for P. Service* (1954) 125 Cal.App.2d 771 [271 P.2d 185] [nonlawyer brother cannot appear as attorney for his sibling in a libel suit].)

A similar issue was considered by the Supreme Court in *Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724 [147 Cal.Rptr. 631, 581 P.2d 636]. In that case, the court rejected a corporation's contention that it could appear in propria persona. The court held that a person "representing a corporation—or for that matter *any other person* or entity—in court is one of vital judicial concern. Such person is clearly engaged in the practice of law in a representative capacity." (*Id.* at p. 730, italics added.) Likewise, a guardian ad litem who appears in court and acts as would an attorney on behalf of the ward is practicing law on behalf of the ward.[7]

Commentators on this issue also have rejected the theory that a nonattorney guardian may act as attorney for the ward. Witkin observes,

---

[6]A different result is recognized where the spouses are defendants in a civil action. In that case, Code of Civil Procedure section 371 provides that where "one spouse neglects to defend, the other spouse may defend for that spouse's right also."

[7]We distinguish statutory exceptions. Although the Supreme Court in *Merco Constr. Engineers, Inc.* v. *Municipal Court*, *supra*, 21 Cal.3d at pages 728-729, held that the California Constitution grants the judiciary the ultimate power to regulate the practice of law, there is precedent for accepting the authority of the Legislature in this area. (See *Hustedt* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329 [178 Cal.Rptr. 801, 636 P.2d 1139]; Code Civ. Proc., § 371.)

"The necessity of employment of an *attorney* by a guardian ad litem who is not himself a lawyer is obvious, . . ." (4 Witkin, Cal. Procedure, *supra*, Pleading, § 65, p. 103, quoted with approval in *Torres* v. *Friedman, supra*, 169 Cal.App.3d 880, 887, original italics.) Brown and Weil advise attorneys seeking to be relieved as counsel to warn the client to hire replacement counsel where the client is a corporation or "a guardian ad litem, executor, conservator or other representative (since they may not represent themselves in pro per unless they are lawyers.)" (Brown & Weil, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1992) Law & Motion, ¶ 9:396; see also L. A. Super. Ct., Law and Discovery Policy Manual, par. 238.)

Other jurisdictions also have concluded that a nonattorney guardian ad litem cannot appear in propria persona in a representative capacity. (See *Marquette Prison Warden* v. *Meadows* (1982) 114 Mich.App. 121 [318 N.W.2d 627] [layperson appointed a minor's next friend could not act as minor's attorney]; *Blue* v. *People* (1992) 223 Ill.App.3d 594 [165 Ill.Dec. 894, 585 N.E.2d 625] [nonattorney father is not authorized to bring a pro se action on behalf of his minor child]; but see *Aid Assoc. for Lutherans* v. *Knobel-Glasgow* (D.Neb. 1989) 738 F.Supp. 1286 [appeal from magistrate's order refusing guardian ad litem's motion to retain legal counsel, denied by district attorney].)

The petitioners assert that Civil Code section 42 entitles a minor to be represented through a guardian. Section 42 permits a minor to "enforce his rights by civil action . . . in the same manner as a person of full age, except that a guardian must conduct the same." Similar language in the federal rules[8] has been construed not to allow a guardian to prosecute an action in propria persona on behalf of a minor child. (See *Meeker* v. *Kercher* (10th Cir. 1986) 782 F.2d 153; *Osei-Afriyie* v. *Medical College of Pennsylvania* (3d Cir. 1991) 937 F.2d 876; *Cheung* v. *Youth Orchestra Foundation of Buffalo* (2d Cir. 1990) 906 F.2d 59.) The same conclusion has been reached with respect to the claim of a parent, as such, to represent his or her minor child. (*Lawson* v. *Edwardsburg Public School* (W.D.Mich. 1990) 751 F.Supp. 1257.)

A few federal cases suggest, in dicta, that a court has discretion to permit a *criminal* defendant to receive lay assistance in his or her self-representation. (See *United States* v. *Whitesel* (6th Cir. 1976) 543 F.2d 1176 [discussing assistance from accountant in federal tax evasion case]; *United States* v.

---

[8]Rule 17(c) of the Federal Rules of Civil Procedure authorizes a minor or incompetent person to appear by a general guardian, committee conservator, next friend or guardian ad litem.

*Stockheimer* (W.D.Wis. 1974) 385 F.Supp. 979.) Because these cases involve criminal defendants, they are inapposite to the issue we decide in this case. We also note that similar arguments have been rejected in this state. (See *In re Gordon J., supra,* 108 Cal.App.3d at p. 914 [right to self-representation did not allow father to defend or assist in defending minor son in juvenile delinquency proceeding].)

We conclude that neither the common law nor guardianship statutes sanction an exception to the State Bar Act prohibition against the unauthorized practice of law in favor of guardians acting for their wards. We next consider the application of the Uniform Parentage Act to this situation.

## C

The Uniform Parentage Act was approved in 1973 by the National Conference of Commissioners on Uniform State Laws. (See U. Parentage Act, Comrs. Prefatory Note, 9B U.L.A. (Master ed. 1979) p. 287; 10 Witkin, Summary of Cal. Law, *supra,* Parent and Child, § 409, p. 454.) The California version of the act was enacted in 1975. (Civ. Code, § 7000 et seq.; Stats. 1975, ch. 1244, § 11, pp. 3196-3201.)

Civil Code sections 7006 and 7008 authorize the initiation of a civil action for the purpose of establishing a parent-child relationship. As originally enacted, Civil Code section 7008 prohibited either parent from acting as a guardian and required all children, even those under 12 years, to be named parties to the action. (Stats. 1975, ch. 1244, § 11, p. 3199.) The statute was amended in 1977 to permit a parent to be appointed as guardian ad litem for the child, and to make permissive, rather than mandatory, the status of a child as a party where the child is under the age of 12 years. (Stats. 1977, ch. 207, § 1, p. 729.)

We have found nothing in the legislative history of the 1977 amendment that supports petitioners' contention that the appointment of a parent as guardian ad litem authorizes the parent to represent the child/ward in propria persona. In fact, the law review article that led to development of the Uniform Parentage Act expresses a concern for conflicts of interests that may exist between the parent and child. (See Krause, *Bringing the Bastard into the Great Society-A Proposed Uniform Act on Legitimacy* (1966) 44 Tex.L.Rev. 829.) As we shall discuss, the model Uniform Parentage Act included a provision authorizing counties to pay attorney fees where the petitioner is indigent. Other than this provision, which was not included in the California statute as enacted, neither the uniform law nor its California adaption addresses the procedural or substantive aspects of legal representation.

Petitioners argue that they are caught in a dilemma: since the minor is over 12 and therefore is a necessary party to a paternity suit by his mother (Civ. Code, § 7008), both mother and child will be denied access to the courts in cases like this one, where the mother cannot afford an attorney to act as counsel for the guardian ad litem unless the court recognizes her right to act in that capacity.

Such a construct may authorize the court to appoint counsel for the mother in her capacity as guardian ad litem. It does not warrant an exception to the State Bar Act prohibition against the unauthorized practice of law. Indeed, if we were to recognize an exception for a propria persona guardian ad litem in a paternity case, we would be hard pressed to draw a reasoned line between that case and any other in which a guardian ad litem is required and in which there are no funds to pay for an attorney to represent the guardian.

■ The prohibition against unauthorized practice of law is within the state's police power and is designed to assure the competency of those performing these services. (*Howard v Superior Court* (1975) 52 Cal.App.3d 722, 726 [125 Cal.Rptr. 255].) Although the rule may lead to harsh results in some cases, the alternative of carving out judicially created exceptions to the rule may be equally harsh. In this case, for example, if the mother were permitted to maintain her action for paternity and support on behalf of the minor, her lack of legal skills could result in a judgment that would forever preclude the child from claiming either support or the benefits of heirship.

■ We conclude that the mother may not be permitted to act in propria persona as guardian ad litem for her ward in the court proceedings she seeks to institute. We turn now to an examination of provisions by which counsel may be found to represent the interest of the child, noting that if such representation is obtained, the claimed dilemma would be significantly relieved or would disappear altogether.

## II

■ Fourteenth Amendment due process requires that "absent a counter-vailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780].) In *Boddie* due process required that an indigent party to divorce proceedings be allowed to litigate without payment of fees and costs. In a few instances, due process considerations have led to a requirement that the court appoint counsel to represent an indigent defendant in a civil proceeding without fees charged to the

defendant. (See, e.g., *Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565] [incarcerated indigent defendant sued in civil action]; *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226] [indigent sued by district attorney acting under Uniform Parentage Act and related statutes].)

No case cited to us or which we have found has held that a mother suing to establish paternity is entitled to appointed counsel. Indeed, it appears to be a general rule that individuals legally capable of representing themselves in propria persona are not entitled to appointed counsel to represent their interests as plaintiffs. The situation of the petitioners in this proceeding presents a somewhat different case. (1f) Since the minor can only appear through a guardian ad litem, and that party cannot appear without counsel, the right of the mother to proceed in her own right is dependent upon the minor being a party to the litigation. In these circumstances, we believe the court is required to appoint counsel to represent the minor if counsel cannot otherwise be provided and if no other statute covers the situation.

The fact that the court may appoint counsel does not resolve the question of how or by whom counsel is to be compensated. ▮ It has been repeatedly recognized that even where a court is empowered to appoint an attorney, it cannot compel the government to compensate that attorney absent a statute authorizing such compensation. (See *Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 920, 924; *Yarbrough* v. *Superior Court* (1985) 39 Cal.3d 197, 200 [216 Cal.Rptr. 425, 702 P.2d 583]; *County of Los Angeles* v. *Superior Court* (1980) 102 Cal.App.3d 926, 930 [162 Cal.Rptr. 636]; *County of Tulare* v. *Ybarra* (1983) 143 Cal.App.3d 580 [192 Cal.Rptr. 49]; and see *People* v. *Ortiz* (1990) 51 Cal.3d 975, 985 [275 Cal.Rptr. 191, 800 P.2d 547] [possible result of requiring unwilling attorney to represent litigant without compensation is decreased quality of representation].) In *Payne,* the court addressed a concern expressed by the Attorney General that providing an inmate-defendant in a civil case with appointed counsel would be a drain on the public fisc. The court noted, in response: "We do not assert such power [to require payment of counsel from public funds]. If and how counsel will be compensated is for the Legislature to decide. Until that body determines that appointed counsel may be compensated from public funds in civil cases, attorneys must serve gratuitously in accordance with their statutory duty not to reject 'the cause of the defenseless or the oppressed.' (Bus. & Prof. Code, § 6068, subd. (h).)" (*Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 920, fn. 6.)

The issue was revisited in *Yarbrough* v. *Superior Court, supra,* 39 Cal.3d at page 207. In that case the court deliberately refrained from dealing with

the power of trial courts to appoint an unwilling attorney to represent an incarcerated civil defendant, "as well as its power and duty to provide funds for counsel's services and costs and, of course, the source of such funds." The court expressed its hope that the Legislature, working closely with the State Bar and other interested groups, would provide a legislative solution to the problem. A general solution has not been forthcoming, and the power of a court to conscript attorneys to represent indigents was challenged in *Cunningham* v. *Superior Court* (1986) 177 Cal.App.3d 336 [222 Cal.Rptr. 854].

We need not join that particular fray, beyond observing that the power to force an attorney to represent an indigent litigant without fee, if it exists, should be used only as a last resort. For the situation presented in this case, there are statutory provisions, that may provide a solution. Whether they do so or not, they should at least be explored.

The model Uniform Parentage Act, as proposed by the National Conference of Commissioners on Uniform State Laws, included a specific provision authorizing courts to order an indigent's share of attorney fees to be paid by the county in which the court is located. This authorization was included in the original version of the bill through which California adopted the uniform act (Sen. Bill No. 347 (1975-1976 Reg. Sess.)), but was deleted in a later amendment (Sen. Bill No. 347 as amended Aug. 5, 1975), and did not appear in the enacted statute.

A 1990 amendment to the act bears on the issue. Civil Code section 7004.5 provides in part that "[a] court may order pendente lite relief consisting of an award of custody pursuant to section 4600 or the granting of reasonable visitation rights pursuant to Section 4601, if it finds, based on the tests authorized by Section 621 of the Evidence Code, that a parent-child relationship exists pursuant to section 621 of the Evidence Code and that the award of custody or the granting of visitation rights would be in the best interests of the child."[9]

Section 4600 et seq. of the Civil Code, to which section 7004.5 refers, governs proceedings concerning custody of children. Section 4606, subdivision (a) authorizes the court to appoint private counsel to represent the interests of the minor child when an issue of custody or visitation is litigated and the court determines that such an appointment is in the best interests of the child. Subdivision (g) of the same section allows the court to apportion the cost of such appointed counsel to the parents, and provides that "the

---

[9]Section 7004.5 of the Civil Code will be replaced by section 7604 of the Family Code.

portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county."[10]

The complaint to establish parental relationship which petitioners propose to file specifically places support, custody and visitation at issue. ▮ Reading the statutes together, a court may determine that since custody and visitation are at issue, counsel may be appointed pursuant to Civil Code section 4606, subdivision (a), and that the reasonable fees for such counsel should be paid by the county if the parents are unable to do so.

The district attorney also has standing to act in the case. Welfare and Institutions Code section 11475.1, subdivision (a) provides: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have the responsibility for promptly and effectively establishing, modifying, and enforcing child support obligations, including medical support, enforcing spousal support orders established by a court of competent jurisdiction, and determining paternity in the case of a child born out of wedlock. The district attorney shall take appropriate action, both civil and criminal, to establish, modify, and enforce child support and when appropriate enforce spousal support orders when the child is receiving public assistance, including Medi-Cal, and, when appropriate, to take the same actions on behalf of a child who is not receiving public assistance, including Medi-Cal."

Subdivision (i) of Welfare and Institutions Code section 11475.1 provides: "In the exercise of the authority granted under this article, the district attorney may intervene, pursuant to subdivision (b) of Section 387 of the Code of Civil Procedure, by ex parte application, in any action under the Family Law Act (Part 5 (commencing with section 4000) of Division 4 of the Civil Code), the Uniform Parentage Act (Part 7 (commencing with Section 7000) of Division 4 of the Civil Code), or other proceeding wherein child support is an issue or a reduction in spousal support is sought. By notice of motion, order to show cause, or responsive pleading served upon all parties to the action, the district attorney may request such relief as appropriate which the district attorney is authorized to seek."[11]

District attorneys have used this statute to appear on behalf of mothers and minor children in proceedings seeking to establish paternity and financial support. Indeed, *Salas* v. *Cortez, supra,* 24 Cal.3d 22, 24, is such a case. (See

---

[10]Civil Code section 4606, subdivision (a) will become section 3150 of the Family Code; subdivision (g) of section 4606 will become section 3153 of that code.

[11]Section 11475.1 has been repealed and reenacted, operative January 1, 1994. The new provisions tailor the statute to the Family Code, which also will become operative on that date.

also *Worth* v. *Superior Court* (1989) 207 Cal.App.3d 1150, 1154 [255 Cal.Rptr. 304] [district attorney has standing to provide representation to those entitled to support, to require those obligated to pay it].)[12]

This statute clothes the district attorney with adequate authority to pursue a remedy on behalf of petitioners that would afford the same or similar relief as that which they seek by the complaint they propose to file.[13]

If petitioners are able to realize such relief through any of these approaches, the dilemma about which they complain would be resolved. At a minimum, petitioners should pursue these avenues of relief. There is no indication in their application to this court that they have done so.

DISPOSITION

The petition for writ of mandate is denied.

Woods (A. M.), P. J., and Vogel (C. S.), J., concurred.

---

[12]See also Welfare and Institutions Code section 11350, subdivision (b), which requires the district attorney to take action in cases where public assistance is being provided. While petitioners' applications in this case indicate inability to pay filing fees and court costs, which were waived, and a lack of financial resources necessary to retain an attorney, they do not say that either petitioner is receiving public assistance. Neither do they state that such assistance is not being provided.

[13]In an action brought by the district attorney for child support of a minor child, "there shall be no joinder of actions, coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support, including an order for medical support." (Welf. & Inst. Code, § 11350.1, subd. (a).) However, the parties may bring an independent action for custody and visitation. (Welf. & Inst. Code, § 11350.1, subd. (b).) Further, as noted by petitioner at oral argument, no attorney-client relationship is created between the district attorney and any person by virtue of the district attorney carrying out his duties under these statutes. (Welf. & Inst. Code, § 11478.2, subd. (a); *Jager* v. *County of Alameda* (1992) 8 Cal.App.4th 294, 297 [10 Cal.Rptr.2d 293].)